## McKEAN COUNTY.

JULY TERM, 1882, No. 213.                MAY 8, 1883.

# Chamberlain v. The Summit Gas Company.

Where the defendant, who was drilling an oil well for a third party, used, as fuel, gas in a pipe at the boiler, which he knew was supplied from the works of the plaintiff, and was there for sale, he is liable upon an implied contract for the price of the gas, though his contract with the owner of the well, of which the plaintiff had not notice, was that the owner should supply the fuel for the drilling.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *McKean County*.

*Assumpsit* by John Cochran, William Cochran, Allen Cochran, and D. R. Knight, trading as the Summit Gas Company, against C. C. Chamberlain, to recover the value of gas used by the defendant in drilling an oil well.

On the trial, before WILSON, J., the plaintiff gave evidence substantially as follows: The business of the plaintiff company was that of furnishing gas for drilling wells. The defendant was indebted for gas for drilling wells $125. They had never seen him or known him. He had never ordered any gas himself. The gas was used on the Yerden farm in February and March, 1880. The defendant was doing business there. Mr. Risher was superintendent of the Empire Oil Company. The defendant used the gas. He was working for the Empire Oil Company. The connections were made before the defendant came there to drill, through the plaintiff's gas-pipe. He simply went on to the property and used the gas he found there.

"Mr. D. Cameron placed the boiler between the two wells, and when Mr. Chamberlain made the contract to drill this other well, the boiler was not moved. All he done was simply to change the connection of steam-pipes.

[Chamberlain *v*. The Summit Gas Company.]

\*    \*    \*  Mr. Risher spoke to me for the gas, as I
didn't know Mr. Chamberlain.   He said Mr. Chamberlain
wanted him to speak to me for the gas.  \*    \*    \*  I
only took his word for Chamberlain."

The defendant testified in substance :

I had a contract for drilling well No. 3 on the Yerden
farm.   I did not know the plaintiffs before the time of
that drilling.   I did not make any contract with them for
furnishing gas on my credit.   I did not authorize any
person to furnish gas on my credit.   I found the connec-
tion made and the gas running in when I began there.

*Q.* " State whether Mr. Risher said there was gas
enough to furnish this contract, or that he said he would
furnish it.

*A.* He did ; yes, sir.   They had already two wells on
the lease, and he said there was gas enough from No. 1
and 2 wells to drill it, and if there was not, he could get
gas enough from the Empire Gas Company to drill it."
He had no authority at all from me to make the contract.
The connections were made by the Summit Gas Company
on that engine before I went on the lease.   " He said that
the connections were already made, and that the gas was
to be furnished, and all I had to do was to go ahead and
drill the well.   I took the well for less money than I ever
drilled a well.   \*    \*    \*  I done that on account of
their furnishing the fuel."   " He said that he was satis-
fied that there was gas enough from this No. 1 and No. 2
well to furnish all I wanted ; but, if there was not, he could
get it from the gas company."   I did not receive any gas
from wells No. 1 and No. 2.   There was no connections
made with these wells.   I understood that the Summit
Gas Company had a line over the hill.   I didn't know
where the fuel was coming from.   I supposed it was com-
ing from the Summit Gas Company.

The Court charged the jury, *inter alia*, as follows :

" Here is the important question raised.   What kind
of a contract does the law imply in such a case ?   And I
confess it is not altogether a clear case to me as to what
the law does imply, [but we will instruct the jury, and say
that it is exactly in this case as if Risher had been stricken
out, and no evidence given in regard to him as to this gas.]
He had no authority *to* make this contract.   Then it
stands that Mr. Chamberlain had used $115 worth of the
plaintiff's gas for the purpose of drilling that well.   The
reason I say that is just the amount is that there is evi-
dence on the part of the plaintiff and the defendant such
as would constitute that as a fair price, and then there is

[Chamberlain *v.* The Summit Gas Company.]

the evidence of the fifteen dollars for the use of the water. Mr. Chamberlain found it convenient to use the gas of the plaintiff, and he did use it, and we say that the law implies that he should pay the plaintiff what is reasonable, and we say that under all this evidence the plaintiff is entitled to recover $125, because there is no evidence to show that Risher had any right to make any such arrangement at all. There is no dispute but what this gas was worth $125. As an illustration, suppose these plaintiffs had had one hundred cords of wood piled up where it was convenient to burn for fuel. As I have already said, a man not authorized to make a contract could not bind a third party. If Mr. Cochran had had one hundred cords of wood burned up, and Mr. Chamberlain, without any contract at all, had been and burned it up, wouldn't he have been liable for that wood? He had unquestionably burned the wood, and this was the other man's property, and his saying that he didn't authorize the other man to make the contract didn't vitiate the liability of him to pay for the property he took. The law implies that he should pay for just what he does take. As another instance, if I should go into the store of a merchant of this town, and take up a pair of boots, and not say a word, and carry them away, if I did not come back and pay for them, the merchant could sue me for damages for what he charged other persons for the same kind of boots. The law implies that the property that is taken in that way, the man who takes it should pay for it just what it is worth, and not any more.

"As to this man Risher, he had no authority to make this contract. He is an interloper. He has no business there any way, and nobody had any business to make a contract in any way for Mr. Chamberlain without his authority.

"Counsel for the defendant have asked to charge the jury : 'That if the jury believe from the evidence that the gas was ordered by Risher in Chamberlain's name, without the authority, permission, or knowledge of Chamberlain, the plaintiff cannot recover, and the verdict must be for the defendant.'

"We affirm this so far as to say there cannot be any recovery on any contract made by Risher, because he had no authority to bind the defendant. This we affirm so far as that there cannot be a recovery on the principle of a contract, because Risher had no right to make such a contract.

"*Second.* If the jury believe from the evidence that

[Chamberlain *v.* The Summit Gas Company.]

the gas was ordered by Risher in Chamberlain's name, without the authority, permission, or knowledge of Chamberlain, and Chamberlain was under no contract to furnish fuel, the plaintiff cannot recover, and the verdict must be for the defendant.'

"There could be no recovery on any contract made by Risher in Chamberlain's name, so far as a contract is concerned. We affirm this because Risher had no authority to bind Chamberlain, but we do say that under all the evidence in this case that is undisputed by the defendant, that the implied law is that he should pay what it is worth, and, therefore, we direct in this case a verdict to be entered in favor of the plaintiff for the sum of $139 06."

February 15, 1882. Verdict for the plaintiff for $139 06, upon which judgment was afterwards entered.

The defendant then took out a writ of error, assigning that the Court erred in its answers to the points, in that part of the charge within brackets, and in not directing a verdict for the defendant.

*W. B. Smiley* and *George J. Wolf* for plaintiff in error.

The doctrine advanced on the other side is alarming, and if approved by this Court, establishes a precedent under which every contractor or even ordinary employé of another would be personally liable for all materials used by him in doing the work of his employer, provided the employer refused or neglected to pay for them. If the defendant is liable, then a man who should rent a suite of rooms in a hotel at a certain fixed price, gas and heat to be furnished by the landlord, would be liable to the gas company for gas used by him, by simply turning it on and lighting it, although the gas company put in the pipes and left the gas turned on ready for use at the request of the landlord, provided the landlord had told them that the guest would pay for the gas used by him. If the Court below was right, every contractor is personally liable to pay for all materials used by him, even though ordered by his employer, if the employer, without authority, orders them in the name of the contractor and has them delivered on his own premises before the contractor begins work. The statement of such a proposition is sufficient argument against it : Deysher *v.* Triebel, 64 Penna. State, 383.

*H. J. Muse* and *T. A. Morrison* for defendant in error.

The defendant below took and converted to his own use the plaintiffs' gas, without authority, and when sued for

[Chamberlain v. The Summit Gas Company.]

the value of it, sought to defend on the ground that he did not know the plaintiffs and did not buy the gas, but admitted the taking and using to the full amount of their claim.

The plaintiffs below provided the facilities for delivering it, but retained possession of it until Chamberlain turned the faucet and took the gas from their possession as much as if it had been wood piled upon their own land and he had sent his teams and taken it. Having taken and used it, does not the law raise an implied contract that he shall pay for it, as stated by the learned Court below? We think it does, and that the charge and rulings of the Court are correct: Deysher v. Triebel, 14 Smith, 383.

May 25, 1883. The opinion of the Court was delivered by Mr. Justice GORDON:

If the testimony of Chamberlain is to be taken as true, and there is no reason why it should not be so taken, his contract with Risher, as agent of the Empire Oil Company, was that, if Chamberlain could not get gas enough from wells Nos. 1 and 2 to furnish fuel for drilling the well which he had undertaken to put down, he, Risher, would get it from the gas company; but he does not undertake to say that to this arrangement the gas company assented, or that it even had knowledge of it. On the other hand, the uncontradicted proof is that Risher, instead of ordering this fuel on account of the Empire Oil Company, ordered it for and on account of Chamberlain, saying, at the same time, that Chamberlain had directed him so to do. Now, whilst this order did not bind Chamberlain for want of power in Risher to make it, it certainly did not bind the Empire Company, and it cannot be pretended that the plaintiffs could have recovered against it for the gas used by Chamberlain. In the absence, then, of a special contract, they could only recover the value of the gas from the person who had taken and used it. Moreover, Chamberlain very well knew that the gas he was using was not that of his employer, from wells Nos. 1 and 2, for there seems to have been no attempt to get it from that source; on the other hand, he knew that it was being supplied from the plaintiffs' works. We cannot, therefore, perceive wherein the Court below erred in saying to the jury that there was a legal implication of a contract on part of the defendant to pay for that which he got and used. How else shall we designate this transaction if it be not an implied contract? The gas was

[Chamberlain *v.* The Summit Gas Company.]

there ready in a pipe at the boiler; it was put there by the plaintiff company, and was designed to be used as fuel for that boiler. The implication thus necessarily arose, that whoever used the boiler might use the gas for raising steam. On the other hand, Chamberlain knew that this gas was an article of commerce, that it was there for sale, and that, whilst he had the implied assent of the company to use it, if he did so use it, it must be paid for. When, therefore, he appropriated this article to his own purposes, he, to all legal intents, became a party to an implied contract, which could be inforced only by an action of *assumpsit*. But what had the plaintiff to do with the contract between him and the Empire Company? As we have before said, it does not appear that they even knew of such a contract, and if they had known of it, they could not have inforced it. It was Chamberlain's business to see to the execution of his own contract, and if he had to pay for what the Empire Company ought to have paid, he has his remedy against that company; but it would be rather a left-handed kind of justice that would allow him to impose the damages resulting from the breach of that contract upon those who had nothing whatever to do with it. This case is very much as if a city landlord should agree with his tenant to pay for the gas used in lighting the leased premises, and the tenant should endeavor to set up this contract in a suit against him by the gas company. Admitted that the company was no party to the contract; admitted that the tenant used the gas; but then the pipes and gas fixtures were already in the premises, and he had but to turn a cock and apply a match. Such a defense would certainly not go very far in a court of justice, and yet it is very much the defense set up here. The Empire Oil Company had agreed with the defendant to pay for the gas which the Summit Company might furnish; the latter company, however, was no party to this agreement. Chamberlain, without taking the trouble to inquire whether or not his principal had provided for the payment of the gas, took and used it, and now, on the sole plea of its convenience in that he had but to turn a cock and apply a match, he sets up his contract with the oil company to defeat the plaintiffs' claim. Such a defense is simply good for nothing, and the Court below did right in so telling the jury.

The judgment is affirmed.

TRUNKEY, J., files dissenting opinion, in which STERRETT, J., concurs.